|  |  |
|---|---|
| CHRISTOPHER ODDO, PHILLIP BRUCATO and MICHAEL LENNON, on behalf of themselves and those similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>BIMBO BAKERIES USA, INC.,<br><br>        Defendant. | Civ. No. 2:16-cv-04267-KM-JBC<br><br>OPINION |

**MCNULTY, District Judge**

The plaintiffs, Christopher Oddo, Phillip Brucato, and Michael Lennon, filed an individual, collective, and class action civil complaint, seeking, on behalf of themselves and other similarly situated, lost wages, damages, and other relief for the alleged failure of defendant Bimbo Bakeries USA, Inc. (hereinafter "BBUSA") to pay overtime compensation, in violation of the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL"). BBUSA brings a motion to dismiss on the grounds that: (1) the plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"); and (2) the plaintiffs have not adequately pleaded a LMRA Section 301 claim. For the reasons discussed below, I will deny BBUSA's motion to dismiss.

## I.  BACKGROUND

The plaintiffs are Route Sales Representatives ("RSRs") for BBUSA. As such, their "primary duties are driving delivery trucks along established routes and delivering and stocking [BBUSA's] products at national chain, local chain,

and independent retailers." (Compl. ¶ 33)[1] The plaintiffs (hereinafter, the "RSRs") allege that BBUSA pays them each "a base salary of $110.00 per week plus a 12% commission on proceeds generated from sales to retailers along [their] delivery route[s]." (*Id.* ¶¶35–37) They allege that, "[d]uring at least one workweek within the last three (3) years, [they and the putative class members] worked over 40 hours . . . ." (*Id.* ¶ 48) The RSRs claim the NJWHL and FLSA require BBUSA to pay them and putative class members additional compensation for hours worked beyond 40 hours per week—i.e., "overtime" pay, but that BBUSA does not. (*Id.* ¶¶ 38, 50) They also allege that BBUSA has failed to implement an hours tracking system. (*Id.* ¶ 59)

The RSRs allege they are "employees" within the meaning of the FLSA and NJWHL and that they have suffered damages as a result of the BBUSA's unlawful failure to pay overtime wages. (*Id.* ¶¶ 67, 73) They also aver, with respect to their FLSA claim, that BBUSA's failure is willful and not based in a reasonable interpretation of the law. (*Id.* ¶¶ 66) The RSRs seek: (i) injunctive relief to prohibit BBUSA from continuing its illegal policy and practice; (ii) compensation and reimbursement "for any and all pay and benefits they would have received" but for BBUSA's allegedly unlawful actions; (iii) liquidated damages in an amount equal to actual damages under the FLSA; (iv) costs and expenses; and (v) any other relief this Court deems just and proper. (*Id.* p. 11)

---

[1] Certain record items repeatedly cited are abbreviated as follows:

Compl. = Complaint, ECF No. 1

Br. = Memorandum of Law in Support of Defendant's Motion to Dismiss, ECF No. 7-1

Opp. = Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, ECF No. 11

Reply = Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss, ECF No. 16

CBA = Exhibit A to the Declaration of Sean P. Lynch (hereinafter, "Lynch Decl.") in Support of Defendant's Motion to Dismiss, ECF No. 7-2, "Agreement between Bimbo Bakeries USA, Inc., Entenmann's (#7008-80) and Bakery Drivers Union Local 802, January 1, 2015 through December 29, 2018" (the Collective Bargaining Agreement)

BBUSA's motion to dismiss hinges on a series of collective bargaining agreements (collectively, the "CBA") that BBUSA says are grounds for preemption of the RSRs' NJWHL and FLSA claims. The CBA, effective January 2015 through December 2018, is significant because BBUSA claims the RSRs are members of the International Brotherhood of Teamsters Local No. 802 union (the "Union"), which bargains with BBUSA for the terms and conditions of its members' employment and memorializes those terms and conditions in the CBA. (Br. 1, 4) The RSRs do not deny that the CBA governs the terms and conditions of their employment. (*See, e.g.*, Lynch Decl. C p.2 (Oddo's claim filed with the New Jersey Division of Wage and Hour Compliance, alleging "[BBUSA] and Teamsters Local 802 have a collective bargaining agreement . . . ."))

BBUSA points to eight provisions in the CBA that purportedly govern the RSRs' pay. (Br. 4–6 (citing CBA Arts. 3,4, 8, 16, 27, 31, and Letter of Agreement) These provisions describe if and how RSRs are paid during vacation, holidays, birthdays, funeral leave, and service time, and also set forth a basic wage and overtime pay formula and scale. The CBA provides for an "alternative compensation program" for the RSRs, which incorporates the basic wage and overtime formula as an alternative to commission-based pay:

> RSRs shall receive for each week the higher of (i) compensation calculated at the regular hourly rate of $21.00 for all hours worked in any 5-day regular work week and $31.50 for all overtime hours worked (not counting ½ hour daily for mandatory meal break) and (ii) their base pay plus commissions at the negotiated rates set forth in Article 27 of the CBA.

(Br. 5 (paraphrasing CBA Art. 27(b)–(c) & (i)(2)–(4)) The "negotiated rate" since January 3, 2016, has been $110 base pay with a 12% net commission—i.e., what the RSRs allege they receive in the complaint. (*See* Compl. ¶ 37)

Before setting forth the alternative compensation program, the CBA states: "The Company and the Union agree that the base pay and commission provisions of the parties' [CBA] compensate fully [RSRs] under federal and state overtime pay laws because of their job duties as outside salespersons and

because the U.S. Secretary of Transportation has the power to regulate the [RSRs] in the performance of their duties. (CBA Art. 27(i)(1))

The CBA also requires BBUSA to institute a time recording system and to record RSR's hours. (CBA, Art. 27(i)(5)) Additionally, the CBA lays out a mandatory grievance and arbitration procedure, through which "all disputes," including disputes regarding pay, are to be resolved. (*See* CBA Arts. 9–10, 27(i)(2))[2]

## II.  LEGAL STANDARDS

### A. Whether Rule 12(b)(1) or Rule 12(b)(6) Governs BBUSA's Motion

BBUSA moves to dismiss the RSRs' complaint for lack of subject matter jurisdiction, asserting a factual challenge based on the CBA. (*See* Defs. Br. 10) BBUSA fails to explain why its challenge should be jurisdictional, rather than merits-based. Some courts in this district have applied only a 12(b)(6) standard to determine LMRA preemption issues, *see, e.g., Carluccio v. Parsons Inspection & Maint. Corp.*, No. CIV A 06-4354 JLL, 2007 WL 1231758, at *2 (D.N.J. Apr. 24, 2007), while others have applied Rule 12(b)(1), *see, e.g., Johnson v. Langer Transp. Corp.*, No. CIV.A. 15-1256 JLL J, 2015 WL 2254671, at *3 (D.N.J. May 13, 2015). From its moving papers, I presume BBUSA reasons that because the LMRA preempts the RSRs' claims, the RSRs' only recourse is to bring suit against BBUSA for breach of the CBA. And, to bring a breach of CBA claim, the RSRs would be required to exhaust the CBA's grievance and arbitration procedures before suing in federal court unless they can state a "hybrid" claim

---

[2] The defendants submit the transcript from an October 28, 2015 hearing on a claim Oddo filed with the Wage and Hour Division of the New Jersey Department of Labor and Workforce Development on May 24, 2015. (*See* Lynch Decl. Ex. C (wage claim), Ex. D (hearing transcript)) In the matter before the Wage and Hour Division, a Wage Collection Referee dismissed Oddo's claim as preempted by virtue of the CBA. The referee explained: "[T]his claim would involve an interpretation of the CBA. And New Jersey is preempted by federal case law from doing that. Meaning we do not have jurisdiction to hear this claim. The CBA sets forth a grievance procedure that you should follow . . . ." The defendants point out that despite this history, the RSRs fail to acknowledge the existence of the CBA in the complaint, which the RSRs filed on July 13, 2016.

against BBUSA *and* the Union.[3] *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290 (1983) ("It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement. Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." (citation omitted)).

Because, BBUSA argues, the RSRs have *not* stated a hybrid claim, the RSRs must seek relief pursuant to the CBA's grievance and arbitration provisions. The RSRs contest the enforceability of these provisions. Nevertheless, "[i]t is a long-standing tenet of law that an employee must attempt to exhaust the grievance and arbitration procedures set forth in the collective bargaining agreement between his employer and his union before he has standing to maintain an action under Section 301 of the [LMRA]." *Monacelli v. Revlon*, No. CIV. 89-4369 (CSF), 1990 WL 105760, at *4 (D.N.J. July 2, 1990); *see also Shaffer v. Mitchell Transport, Inc.*, 635 F.2d 261, 264 (3d Cir. 1980) (citations omitted) ("[I]f [a] collective bargaining agreement provide[s] for resolution of [a] dispute through arbitration, the court ha[s] *no jurisdiction* to address the merits."). With the RSRs' very ability to maintain a suit up for debate, I am satisfied that Rule 12(b)(1) is an appropriate rule to apply here.

---

[3]     The United States Supreme Court explained in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164, 103 S. Ct. 2281 (1983) that because the requirement that an employee exhaust any grievance or arbitration remedies provided in a CBA before bringing suit against his employer may "work[] an unacceptable injustice" if the union representing the employee acts in a way that breaches its duty of fair representation,

> an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.

*Id.* (citations omitted).

## B. Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). "[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual attack, on the other hand, permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

> The burden of establishing federal jurisdiction rests with the party asserting its existence. [citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3, 126 S. Ct. 1854, 164 L.Ed.2d 589 (2006).] "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." [citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)

(quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).] A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.' " [citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).]

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." [citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).] By contrast, in reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." [citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted).]

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (footnotes omitted; case citations in footnotes inserted in text). I consider BBUSA's jurisdictional challenge a factual attack and therefore, will consider the CBA as extrinsic evidence. In the end, it may matter little; the authenticity of the CBA, which is integral to the parties' relationship, is not disputed, and even on a Rule 12(b)(6) standard it would likely be considered. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

## C. Rule 12(b)(6)

In Sections III.C & D, I briefly consider in the alternative the issue of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## III.  DISCUSSION

### A. Whether The LMRA Preempts The RSRs' NJWHL Claim

BBUSA argue that the RSRs' NJWHL claim fails because it is completely preempted by the LMRA. Specifically, BBUSA argues the NJWHL claim arises

from the CBA, or alternatively, depends upon the court's interpretation of the CBA.[4]

Section 301(a) of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

> Although section 301 refers only to jurisdiction, it has been interpreted as authorizing federal courts to fashion a body of common law for the enforcement of collective bargaining agreements. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S. Ct. 912, 917, 1 L.Ed.2d 972 (1957). An underlying reason for the development of federal law in this area is the need for uniform interpretation of contract terms to aid both the negotiation and the administration of collective bargaining agreements. *See Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04, 82 S. Ct. 571, 576-77, 7 L.Ed.2d 593 (1962) (differing

---

[4]  Here is the NJWHL overtime guarantee:

Every employer shall pay to each of his employees wages at a rate of not less than . . . $7.15 per hour for 40 hours of working time in any week and 1 ½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week . . . .

N.J. Stat. Ann. § 34:11-56a4 (West).

Elsewhere, I have held that, although the New Jersey Supreme Court has not definitively ruled on the question, it would likely find that "a private cause of action exists under the NJWHL to recover unpaid overtime compensation." *Thompson v. Real Estate Mortg. Network, Inc.*, 106 F. Supp. 3d 486, 492 (D.N.J. 2015). As for what a plaintiff must allege to state a claim for unpaid overtime under the NJWHL, "[b]ecause the NJWHL overtime compensation and minimum wage requirements are modeled after and nearly identical to their analogous Fair Labor Standards Act regulations, judicial interpretations construing the FLSA are applicable." *Harris v. Scriptfleet, Inc.*, No. CIV.A. 11-4561 SRC, 2011 WL 6072020, at *4 (D.N.J. Dec. 6, 2011); *see also Thompson*, 106 F. Supp. at 491 ("The FLSA includes a right of action to recover withheld overtime payments; the principle of parallel construction suggests that the NJWHL be interpreted the same way."). To successfully state a claim for overtime under Section 7(a) of the FLSA, and therefore to state an NJWHL overtime claim, a plaintiff need only show "a failure to pay overtime compensation . . . to covered employees." *Harris*, 2011 WL 6072020, at *2; *see also* 29 U.S.C.A. § 207.

interpretations would stimulate and prolong labor disputes).

*Antol v. Esposto*, 100 F.3d 1111, 1115 (3d Cir. 1996), *amended*, (3d Cir. Jan. 20, 1997).

In furtherance of this purpose,

> LMRA § 301 completely preempts a state cause of action . . . when the resolution of said action is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S. Ct. 1904, 85 L.Ed.2d 206 (1985); *see also Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S. Ct. 1877, 100 L.Ed.2d 410 (1988) ("[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement."). By contrast, when resolution of the state law claim is "independent" of a CBA and does not require construing one, the state law claim is not preempted by § 301. *Lingle,* 486 U.S. at 410, 108 S. Ct. 1877; *accord Antol v. Esposto,* 100 F.3d 1111, 1117 (3d Cir.1996).

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 305–06 (3d Cir. 2014).

Whether a claim requires a court to construe or interpret a CBA to the point that the claim *depends* on interpretation of the CBA is a question riddled with nuance and exception. Merely considering the terms of a collective-bargaining agreement—looking to undisputed terms in a CBA or interpreting a CBA solely to compute damages, for example—does not warrant preemption. *See Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S. Ct. 2068 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 n. 12, 108 S. Ct. 1877 (1988) ("Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise

pre-empted, would stand."); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261–62, 114 S. Ct. 2239, 2248 (1994) ("'[P]urely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" (citing *Lingle*, 486 U.S. at 407)); *see also Bull v. United Parcel Serv., Inc.*, No. CIV. 07-2291 KM MCA, 2014 WL 2965696, at *13–14 (D.N.J. July 1, 2014) ("The CBA may have been relevant to the determination of certain issues of fact, but there is no dispute about what it says, what it means, whether it is valid, or whether [the plaintiff] is bound by it. . . . [The defendant] cites the CBA to bolster its case and justify its actions. That is perfectly permissible, but it does not transform this case into one about, or arising from, the CBA."), *aff'd in part, appeal dismissed in part,* 620 F. App'x 103 (3d Cir. 2015).

Article 27 of the CBA provides that the RSRs are to be paid the higher of (a) $21.00/hour and $31.50/overtime hour or (b) a given week's commission-based income. From that provision, BBUSA draws the implication that the RSRs' demand for overtime compensation is necessarily grounded in, or arises from, the CBA. (*See* Br. 13) And even if the RSRs' NJWHL claim is not directly based on the CBA, BBUSA argues, it is still preempted because it substantially depends on analyzing the CBA—that is, it "requires the Court to interpret how the CBA's pay and time reporting provisions apply to [the RSRs'] compensation, and [to] interpret how that compensation is viewed under the NJWHL." (Br. 14)

BBUSA relies chiefly on three cases. In *Johnson v. Langer Transp. Corp.*, a court in this district determined that the LMRA preempted a plaintiff's NJWHL claim where the plaintiff sought overtime wages. WL 2254671, at *5 (D.N.J. May 13, 2015). There, however, the plaintiff specifically alleged that his employer's failure to pay these wages breached provisions of a CBA. *See id.* ("Plaintiff alleges that various provisions of the CBA require Defendant to pay Plaintiff certain wages and that Defendant failed to pay him for certain regular and overtime hours worked. . . . These core allegations of Plaintiff's Counts I and II are founded directly on rights created by the CBA.") Here, the face of the

Complaint alleges a violation of the NJWHL only; it does not refer to the CBA at all.

The defendants characterize this as artful pleading—*i.e.,* the strategic omission of an allegation that is nevertheless essential. I do not think, however, that the plaintiffs here have exceeded the bounds of the principle that a plaintiff is master of his complaint. Taking guidance from courts that have recognized under the well-pleaded complaint rule in the removal context a plaintiff's right "to endeavor to establish a basic right under the state statute regardless of the language in the CBA," I reject defendants' characterization. *O'Keefe v. Hess Corp.,* No. CIV.A. 10-2598 WJM, 2010 WL 3522088, at *5 (D.N.J. Sept. 1, 2010), *report and recommendation adopted,* No. 2:10-CV-2598-WJM-MF, 2010 WL 4102848 (D.N.J. Oct. 15, 2010).[5]

The defendants also cite *Firestone v. S. California Gas Co.,* which found preemption. 219 F.3d 1063, 1066 (9th Cir. 2000). There, however, the California statute under which the plaintiffs sued exempted from its coverage "any employee covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work . . . ." *Id.* (quoting 8 Cal. Code Reg. § 11040(3)(D)). The CBA, then, was explicitly incorporated by statute. No such factor is at play here.[6]

---

[5]    *See also Caterpillar Inc. v. Williams,* 482 U.S. 386, 399, 107 S. Ct. 2425, 2433 (1987) ("[T]he plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."); *Voilas v. Gen. Motors Corp.,* 170 F.3d 367, 373–74 (3d Cir. 1999) ("Thus, under *Caterpillar,* employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining contract.").

[6]    BBUSA also cites two cases from the Third Circuit in which the court determined that a state law overtime claim was preempted because it depended on a CBA. (*See* Br. 20–21) But in both cases, the preempted claim was made, not under the NJWHL, which creates an independent right of action, but under the Pennsylvania Wage Payment and Collection Law, which "does not create a right to compensation.

Finally, the defendants rely on *Hayes v. Aramark Sports, LLC*, No. 08-10700-RWZ, 2009 U.S. Dist. LEXIS 133646, at *6 (D. Mass. Mar. 30, 2009). The plaintiffs there, like the RSRs here, alleged violation of a state overtime law. Those plaintiffs were also covered by a CBA that required overtime pay pursuant to an "array of pay rate provisions." *Id.* at *8. The *Hayes* court determined that "an interpretation of the payment requirements of [the] CBA [was] necessary for an understanding of how many hours each employee worked and how that employee was paid for the actual hours worked," rejecting the plaintiffs' argument that their state law overtime claim could be resolved simply by "using all of their pay earned in a given week and dividing by the number of hours worked." *Id.* The RSRs argue that *Hayes* is distinguishable because the pay provisions of that CBA were "far more complex" than those here. (Opp. 11) Alternatively, they argue that *Hayes* is out-of-circuit and wrongly decided. (*Id.* n.2)

Disparate CBA provisions and disparate state laws may produce disparate results in § 301 preemption cases. *See Antol v. Esposito*, 100 F.3d 1111, 1115 (3d Cir. 1996), *as amended* (3d Cir. Jan. 20, 1997) (observing that section 301 preemption case law "has not been completely consistent, particularly when state law may affect the outcome."). Still, I am not persuaded that *Hayes* is distinguishable on those grounds. The Massachusetts statute cited in *Hayes* contains certain formulas and exclusions not present in the NJWHL itself.[7] But the NJWHL's implementing regulations, cited by neither party, narrow the gap.[8]

---

Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." *Harris v. Healthcare Servs. Grp., Inc.*, No. CIV.A. 06-2903, 2008 WL 2789534, at *5 (E.D. Pa. July 18, 2008) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir.1990)); *see also Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996), *as amended*, (3d Cir. Jan. 20, 1997).

[7]      Except as otherwise provided in this section, no employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer than forty hours, unless such employee receives

compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed. **Sums paid as commissions, drawing accounts, bonuses, or other incentive pay based on sales or production, shall be excluded in computing the regular rate and the overtime rate of compensation under the provisions of this section.**

Mass. Ann. Laws ch. 151, § 1A (emphasis added).

[8]   (a) The "regular hourly wage" is a rate per hour.

(b) The act does not require employers to compensate employees on an hourly rate basis. Their earnings may be determined on a piece-rate, salary, bonus, commission or other basis, but the overtime compensation due to employees shall be paid on the basis of the hourly rate derived therefrom. **Therefore, the regular hourly wage of an employee is determined by dividing his or her total remuneration for employment, exclusive of overtime premium pay, in any workweek, by the total number of hours worked in that workweek for which such compensation was paid.**

(c) If an employee is remunerated solely on the basis of a single hourly rate, the hourly rate shall be his or her "regular hourly wage".

N.J. Admin. Code § 12:56-6.5 (emphasis added). And further,

(a) The "regular hourly wage" **shall not be deemed to include**:

1. Payments in the nature of gifts made on holidays or on other special occasions or as a reward for service, the amounts of which are not measured by or dependent on hours worked, production or efficiency;

2. Payments made for occasional periods when no work is performed due to vacation, holiday or other similar cause;

3. Reasonable payments for traveling or other expenses incurred by an employee in the furtherance of his or her employer's interests and properly reimbursable by the employer which are not made as compensation for employment;

4. Sums paid in recognition of services performed during a given period if either:

i. Both the fact that payment is to be made and the amount of payment are determined at the sole discretion of the employer at or near the end of the

I think the *Hayes* court, in my shoes, might well hold that application of the regulatory exclusions from the definition of "regular hourly wage" would demand interpretation of the CBA's holiday, vacation, birthday, and funeral pay provisions. So I do not find *Hayes* distinguishable; I must decide squarely whether I agree with its reasoning. I do not agree with *Hayes*, for the following reasons.

To draw connections between the pay provisions in the CBA and the regulatory exclusions, *see supra,* does not, in my view, actually require *interpretation* of the CBA. To be sure, the analysis requires that I *refer* to the CBA. The application, however, seems straightforward: holiday, vacation, birthday, and funeral pay are to be excluded from the "total remuneration" making up the "regular hourly wage." The defendants argue that the Court would also have to analyze the "Splitting Routes Pay Provision" and resolve factual issues concerning its effect on the RSRs' pay. But looking to the Complaint, the CBA, and the language of the NJWHL, I see no indication that the Splitting Routes Pay Provision is even on the table. The Complaint does not allege that the plaintiffs receive split route pay and BBUSA submits nothing to

---

period and not pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly; or

ii. The payments are made pursuant to a bona fide profit-sharing plan or trust, or thrift or savings plan to the extent to which the amounts paid to the employee are determined without regard to hours of work, production or efficiency; or

5. Contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan providing for old age, retirement, life, accident, or health insurance or similar benefits for employees; or

6. Additional premium compensation for hours worked in excess of eight hours per day, or for work on Saturdays, Sundays, holidays, or regular days of rest; or

7. Overtime premiums.

N.J. Admin. Code § 12:56-6.6 (emphasis added).

indicate that they do. Even assuming *arguendo* that they do, under the plain meaning of the NJWHL and its effectuating regulations, I see no reason why split route pay would be excluded from the "regular hourly wage" calculation.

Nor do the defendants alert me to any live interpretational dispute as to specific terms in the CBA that I would need to resolve in order to adjudicate the RSRs' NJWHL claim. *See Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.") BBUSA says that it is not necessary to identify such a dispute to find preemption, but it does not supplement that contention with convincing argument or citation to on-point authority. (*See* Reply 2) I believe that this is an important factor. *Cf. Bell v. Se. Pennsylvania Transp. Auth.*, 733 F.3d 490, 495 (3d Cir. 2013) (rejecting defendants' position that the LMRA requires the plaintiffs to arbitrate its FLSA claim "[b]ecause *there exists no dispute* over the interpretation or application of any of the provisions of the CBAs that has any impact on the [plaintiffs'] FLSA claim . . . .") (emphasis added); *see also Basa v. Rizza Chevrolet, Inc.*, 750 F. Supp. 2d 987, 988–89 (N.D. Ill. 2010) ("[W]ithout an identification of a dispute between the parties concerning terms or provisions in the CBA, it [is] premature for the district court to find preemption." (citing *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 760 (7th Cir. 2008) ("Because preemption . . . will only occur if the parties dispute the CBAs' terms, and even then, arguably only if the dispute is relevant as to liability as opposed to damages, the record is not sufficiently developed . . . ."))).

I also see no reason why, in the first place, I necessarily must rely on the CBA to adjudicate the RSRs' NJWHL claim. I would think that whatever form of documentation or electronic pay system BBUSA uses to disburse the RSRs' wages could be produced in discovery. Such discovery could be used to calculate the "regular hourly wage" according to the NJWHL's regulatory definitions—*i.e.*, without resort to the CBA. *Cf. Snyder v. Dietz & Watson, Inc.*,

837 F. Supp. 2d 428, 451–52 (D.N.J. 2011) ("Resolution of [a New Jersey's Minimum Wage Act] claim will involve consideration of the number of hours Plaintiff worked, the statutory minimum hourly rate that Plaintiff was entitled to be paid, and the amount that Plaintiff was actually paid, and will not require a factfinder to consult or interpret the CBA to determine if the amounts due were paid. Consequently, the Court finds that the claim under the New Jersey Minimum Wage Act is not preempted under Section 301.").

A couple of hypothetical examples may further clarify my point. Imagine, for example, that BBUSA was completely disregarding the CBA and categorizing pay by some arbitrary method. In such a case, interpretation of the CBA might be beside the point. Or imagine that BBUSA was satisfying its obligations under the CBA completely, but still violating the NJWHL's overtime requirements. Again, interpretation of the CBA would be beside the point.

I say "beside the point" for the following reason: In any case, the NJWHL imposes a duty on employers to pay their employees overtime wages—a duty that is independent of any contractual obligations. That duty, moreover, is not vitiated by the LMRA: "§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Allis-Chalmers Corp.*, 471 U.S. at 212–13. *See also Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 448 (D.N.J. 2011) ("Plaintiff chose not to frame his complaint in terms of an illegal CBA provision, but instead challenges the actions of his employer. The right to be paid the wages earned, without deductions for unauthorized purposes, exists independently of the CBA and cannot be eviscerated by a collective bargaining agreement.").

A NJWHL claim may overlap factually with a hypothetical LMRA claim. But it is nevertheless independent; "[e]ven if resolution of a state-law claim 'involves attention to the same factual considerations as the contractual determination . . . such parallelism [does not mandate preemption].'" *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 133 (E.D.N.Y. 2011) (quoting *Lingle,* 486 U.S. at 408, 108 S. Ct. 1877)).

For all of these reasons, then, I decline to follow the reasoning of *Hayes*.

BBUSA also argues that because the RSRs allege that BBUSA failed to track its employees' hours, and because the CBA specifically provides for implementation of a time-tracking system, the RSRs necessarily allege breach of a right that arises directly from the CBA. (Br. 13) In the first instance, the question of whether BBUSA tracks RSRs' hours may be resolved without reference to the CBA. Setting that aside, it is not even clear that RSRs seek to recover under the NJWHL or FLSA for this alleged failure; the allegation that BBUSA does not track time appears only in the general allegations of the Complaints—not in the specific "Count 1" or 'Count 2" allegations that set forth the RSRs' NJWHL and FLSA causes of action. (*See* Compl. ¶¶ 1, 59; *cf. id.* ¶¶ 60–73) I thus decline to read the RSRs' claims as arising from the CBA. Accordingly, Section 301 of the LMRA does not preempt the RSRs' NJWHL claim.

### B. Whether The LMRA Precludes The RSRs' FLSA Claim

I proceed to consider the RSRs' FLSA claim. The defendants argue that the FLSA claim is also "preempted" by the LMRA.[9] The Third Circuit has explained that because "[t]he enforcement provision of the FLSA is limited to employee suits seeking enforcement of their rights under the statute," and "the FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement . . . . claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301." *Vadino v. A. Valey Engineers*, 903 F.2d 253, 266 (3d Cir. 1990) "In other words,

---

[9]     The term "preemption" commonly refers to a federal law's taking precedence over state law. Courts have sometimes used a separate term, "preclusion," to refer to the doctrine for which BBUSA argues here—i.e., one federal law taking precedence over another federal law. *See, e.g., Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) ("§ 301 precludes claims brought under the FLSA which involve interpretation of a CBA").

if a FLSA claim depends on the disputed interpretation of a CBA provision, an employee must first go to arbitration—through the representative union—before vindicating his or her rights in federal court under the FLSA." *Bell v. Se. Pennsylvania Transp. Auth.*, 733 F.3d 490, 494 (3d Cir. 2013).

Therefore,

> [i]t follows that in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA, the procedure [the U.S. Court of Appeals for the Third Circuit] envision[s] is to decide the contract interpretation issue through the grievance procedure to arbitration. If exhaustion can be excused, then the employee may file a[n] [LMRA] claim . . . . Concurrent with that, the employee may bring a FLSA claim, but the FLSA overtime claim would be dependent upon the resolution in the [LMRA] claim of the contract interpretation issue.

*Vadino*, 903 F.2d at 266.

The converse is also true. Where an overtime claim rests independently on FLSA statutory rights, as opposed to contractual rights under a CBA, and where no interpretation of the CBA is necessary to adjudicate the FLSA claim, the plaintiff may proceed on its FLSA claim without first seeking arbitration. *See Barnello v. AGC Chemicals Americas, Inc.*, No. CIVA208CV03505 WJMMF, 2009 WL 234142, at *3 (D.N.J. Jan. 29, 2009) (The LMRA did not preempt plaintiffs' FLSA overtime claim where the "[p]laintiffs [did] not seek a determination as to the appropriate wage rate under the CBA. Instead, Plaintiffs focus[ed] on their statutory right to compensation under the FLSA. Not only d[id] the Complaint lack any direct reference to the CBA, Plaintiffs explicitly state[d] in their moving papers that "Plaintiffs do not claim that they are owed compensation pursuant to the CBA" and further emphasize[d] that their 'claims stem solely from their alleged statutory right to compensation for time worked under the FLSA . . ., and if applicable, to over time provided by the FLSA . . . .'"); *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 133–34 (E.D.N.Y. 2011) ("Employees' rights to minimum wage and overtime pay

under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargaining agreement. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.") (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 745, 101 S. Ct. 1437, 1447, 67 L. Ed. 2d 641 (1981) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50, 94 S. Ct. 1011, 1020, 39 L. Ed. 2d 147 (1974))); *Moeck v. Gray Supply Corp.*, No. 03-1950 (WGB), 2006 WL 42368, at *2 (D.N.J. Jan. 6, 2006) ("Although the law is unsettled as to whether the FLSA preempts state common law causes of action, most courts have held that claims directly covered by the FLSA (such as overtime), must be brought under the FLSA.").

BBUSA chiefly relies on the Third Circuit's decision in *Vadino* to argue that the RSRs' FLSA claim substantially depends on the CBA. (Br. 21-23) *See Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990). There, the Court of Appeals found that the plaintiff's FLSA overtime claim rested on interpretation of his collective bargaining agreement (and that any LMRA Section 301 claim would be time-barred). *Id.* at 266–267. But in *Vadino*, the plaintiff did not simply claim that his employer failed to pay him overtime wages at a rate of 1.5 times his regular rate; he insisted that his employer was not using the correct "regular rate" to calculate his overtime wages. He claimed that his union card designated him a "journeyman," a class of worker described only in the CBA—not in the FLSA. And the complaint specifically alleged that the employer had "breached the collective bargaining agreement by paying Vadino less than the journeyman's rate." *Id.* at 257. These facts led the Court of Appeals to characterize the case as "a dispute concerning the amount of wages that should have been paid under the terms of the collective bargaining agreement," which "rest[ed] on interpretations of the underlying collective bargaining

agreement," as opposed to a dispute "resting on the language of section 7(a)." *Id.* at 266.

BBUSA says the RSRs here allege "that BBUSA violated the FLSA by paying them in accordance with the express provisions of the CBA—at a rate that [the RSRs] allege is less than the overtime rate to which they believe they were entitled." But the Complaint contains no reference to the CBA at all. The RSRs allege only that BBUSA's "violations of the FLSA include, but are not limited to, failing to pay . . . overtime compensation for hours worked over 40 per workweek," and that "Defendants' conduct in failing to pay . . . was and is willful and was and is not based upon any reasonable interpretation of the law." (Compl. ¶¶ 65–66) That is reasonably interpreted as an independent claim under the FLSA.[10]

As established above, to state a claim for unpaid overtime under the FLSA, the RSRs need only plead—plausibly, of course[11]—that they are covered employees under the FLSA and that BBUSA failed to pay them overtime compensation. Like the NJWHL, the FLSA sets forth an independent formula for computing overtime wages based on the employee's "regular rate," and it describes certain types of compensation that are excluded from this rate. *See* 29 U.S.C.A. § 207(a), (e). The FLSA provides for certain broad exemptions rooted in collective bargaining agreements, but BBUSA has not argued that any of these apply. (And if they did, they might not require any significant

---

[10]    I consider *arguendo* whether a claim under the CBA was necessarily implied. *Vadino* itself, however, distinguished earlier necessary-implication cases in terms that apply here. One such case was *Minizza v. Stone Container Corp.,* 842 F.2d 1456 (3d Cir. 1988) (discussed in *Vadino,* 903 F.2d at 265). In *Minizza,* the Court of Appeals was called upon to determine whether, under FLSA Section 207(e)'s language exempting certain types of payment from the "regular rate" calculation, certain bonus payments provided for in a collective bargaining agreement should be construed as part of covered employees' "regular rate." 842 F.2d at 1460–63. That determination is closely parallel to the one that BBUSA claims *this* Court must undertake with respect to the FLSA and the NJWHL. (*See* Br. 4–6, 18–20, 23; Reply 3–4) Yet the Court of Appeals in *Minizza* did not even address LMRA preemption as a possibility, and the *Vadino* court considered the *Minizza* analysis "vastly different from the task" at hand. 903 F.2d at 265.

[11]    *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

interpretation of the CBA.)

In short, I find no basis on which to conclude that the RSRs' FLSA overtime claim arises from, or will require me to interpret, the CBA. It follows that the RSRs may litigate their FLSA claim before this Court directly, without using the vehicle of LMRA Section 301. Therefore, they need not fulfill the LMRA-related precondition of exhausting the administration and grievance procedures in the CBA.

## C. Whether The RSRs Are Exempt from The NJWHL and FLSA

I proceed to a related issue, which has both a both a Rule 12(b)(1) jurisdiction/preemption component, and a Rule 12(b)(6) merits component. I consider it under both standards.

In a footnote, BBUSA submits that "[the RSRs'] sales duties and their operation of large commercial delivery trucks render them exempt from federal and state overtime requirements under the outside sales, motor carrier, and/or combination of exemptions." (Br. 4 (citing 29 U.S.C. § 213(a)(1), (b)(1) and N.J.A.C. 12:56-7.1))[12] This, they say, implicates the CBA, which (to reiterate) states:

> The Company and the Union agree that the base pay and commission provisions of the parties' [CBA]

---

[12]   29 U.S.C. § 213(a)(1) exempts from the FLSA's minimum wage and maximum hour requirements, *inter alia*, employees employed "in the capacity of outside salesman (as such terms are defined and delimited . . . by regulations of the Secretary . . . .)" and 29 U.S.C. § 213(b)(1) exempts from its maximum hour requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of sections 31502 of Title 49."

N.J. Admin. Code § 12:56-7.1 provides: "Any individual employed in a bona fide executive, administrative, professional or outside sales capacity shall be exempt from the overtime requirements of N.J.A.C. 12:56–6.1." N.J. Admin. Code § 12.56-7.2, which defines and delimits these exemptions, adopts by reference 29 CFR Part 541, a provision of the FLSA that sets forth the requirements for exemptions. "Drivers who deliver products and also sell such products" are included among exempt employees, 29 C.F.R. § 541.504(a) (*cf.* (Compl. ¶¶ 33 ("Named Plaintiffs' primary duties are driving delivery trucks along established routes and delivering and stocking Defendant Bimbo's products at national chain, local chain, and independent retailers.")), but the regulations also list "[s]everal factors [that] should be considered in determining if a driver has a primary duty of making sales . . . ," 29 C.F.R. § 541.504(b).

> compensate fully Route Salespersons under federal
> and state overtime pay laws because of their job duties
> as outside salespersons and because the U.S.
> Secretary of Transportation has the power to regulate
> the Route Salespersons in the performance of their
> duties.

(CBA Art. 27(i)(1)).

The RSRs respond that whether they fall within the cited overtime exemptions depends on the duties they actually perform—not the CBA's characterization of those duties. (Opp. 7) Additionally, they cite 29 C.F.R. 541.4, a regulation which provides that "[t]he Fair Labor Standards Act provides minimum standards that may be exceeded, but cannot be waived or reduced." I am not convinced that this particular provision disposes of the defendants' exemption argument.

I *am* persuaded, however, by another regulation, which defines and delimits certain jobs that are exempt from the FLSA's overtime guarantee, and which is incorporated by reference in the NJWHL for the same purpose: "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2. *See also* n.12, *supra*. I read this provision as supporting the RSRs' position that Article 27(i)(1) of the CBA, *supra*, is not enough to exempt the RSRs from the explicit overtime guarantees of the FLSA and NJWHL. The application of those provisions and the exemptions from them will depend on the RSRs' salaries and duties. The defendants do not argue that the CBA defines the RSRs' duties. And even if the CBA purported to do so, I think the RSRs' duties would still be defined largely by their actual on-the-job conduct.

Given the fact-bound question of job duties, as well as the extensive regulatory scheme defining and delimiting the scope of exemptions, I think the plaintiff has presented a merits issue that is not preempted, and that the issue

is not appropriate for resolution on the current record (let alone on a Rule 12(b)(6) standard).

As the Third Circuit explained in *Dooley v. CPR Restoration & Cleaning Servs. LLC*, addressing the defendant's motion for summary judgment,

> "Congress did not define the term 'outside salesman,' but it delegated authority to the DOL to issue regulations 'from time to time' to 'defin[e] and delimi[t]' the term." *Christopher v. SmithKline Beecham Corp.,* — –U.S. ——, 132 S. Ct. 2156, 2162, 183 L.Ed.2d 153 (2012) (all alterations in original). Pursuant to this authority, the DOL classifies a worker as "employed in the capacity of outside salesman" if, in relevant part, (1) the employee's primary duty is "obtaining orders or contacts for services," and (2) the employee is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a).
>
> The term "primary duty" is defined in the regulations as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on ***all the facts in a particular case***, with the major emphasis on the character of the employee's job as a whole." *Id.* The employee's "job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. Rather, an employee's status "must be determined on the basis of whether the employee's salary and duties meet the requirements" for exemption. *Id.*

591 F. App'x 74, 76 (3d Cir. 2014) (emphasis added; applying Rule 56 standard). *See also Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 452 (D.N.J. 2011) (holding on a Rule 12(b)(6) motion to dismiss that court could not determine whether the plaintiffs were exempt as outside sales employees from FLSA wage requirements, because plaintiff's primary duty was not apparent from the face of the CBA, and the other fact-based factors needed to be assessed); *Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp. 2d 790, 794 (W.D. La. 2009) (on motion for partial summary judgment, holding that "[t]he decision whether an employee is exempt from the FLSA's overtime

compensation provisions under 29 U.S.C. § 213(a)(1), is primarily a question of fact . . . However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law.") (quoting *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 330–31 (5th Cir. 2000)).

Therefore, I will deny the motion to dismiss to the extent it is based on defendants' affirmative defense that plaintiffs are exempt from the overtime guarantees they seek to enforce. Whether the plaintiffs fall within an exemption must be determined by the facts brought out through ordinary discovery. I hold further that the issue of exemption does not turn on my interpretation of the CBA and that the plaintiffs' claims are not preempted or precluded by the LMRA.[13]

### D. Whether The RSRs Have Stated NJWHL and FLSA Claims for Overtime Wages

BBUSA asks me in the alternative to apply Fed. R. Civ. P. 12(b)(6), although it does not explicitly argue that the RSRs have failed to state NJWHL or FLSA claims. Nevertheless, for the avoidance of doubt, I will briefly state that I am satisfied that the RSRs have stated NJWHL and FLSA claims for overtime wages. As discussed, under both statutes, what the RSRs must plead is straightforward: that BBUSA has failed to pay the plaintiffs overtime wages that they are owed and that the statutes recognize the plaintiffs as covered employees. *See* n.4, *supra; see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (Concluding that to state a plausible FLSA claim for overtime wages, plaintiffs "must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours," and "some uncompensated time in excess of the 40 hours"). The RSRs have adequately alleged NJWHL and FLSA claims for

---

[13]     In anticipation of a possible ruling that their claims are preempted, the RSRs argue that the grievance and arbitration provisions of their CBA are unenforceable. (Opp. 11–13) Because I find that the RSRs' claims are not preempted and therefore, the RSRs have standing to bring this action in this federal forum and need not exhaust the grievance and arbitration procedures, I do not reach this argument.

overtime wages. (*See* Compl. ¶¶ 33–34, 38–39, 45, 48, 50–51, 57–58, 61–73) And, as established in the preceding section, resolution of BBUSA's exemption-based affirmative defense is not appropriate for a motion to dismiss brought under Rule 12(b)(6). *See Snyder, supra.*

## IV.   CONCLUSION

For the reasons stated above, I am satisfied that this Court has subject matter jurisdiction to hear these claims under the NJWHL and FLSA, which are not preempted, and that the complaint states a claim. Accordingly, BBUSA's motion to dismiss will be denied.

Dated:  May 17, 2017

KEVIN MCNULTY
United States District Judge